UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| In re: Yolanda Nicole McCoy | : | Case No. 24-21176 |
| | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| Yolanda Nicole McCoy, | : | |
| | : | |
| Movant. | : | |
| | : | |
| v. | : | |
| | : | |
| McKeesport Housing Authority, | : | |
| | : | |
| Respondent. | : | |

## **<u>OBJECTION TO CLAIM</u>**

NOW COMES Debtor/Movant Yolanda Nicole McCoy by her attorneys, Danielle

Harrington and Neighborhood Legal Services Association, and objects to the claim filed by

McKeesport Housing Authority as follows:

1. Debtor/Movant Yolanda Nicole McCoy filed the instant Chapter 13 bankruptcy on May

   14, 2024.

2. On July 12, 2024 Creditor/Respondent McKeesport Housing Authority filed an

   unsecured claim in this Chapter 13 bankruptcy proceeding for $5,961.69, arising from a

   public housing lease the parties entered into on June 29, 2018. Exhibit A.

**FIRST OBJECTION – Creditor/Respondent has improperly claimed court costs that they
have not incurred.**

3. The Debtor/Movant's responses in Paragraphs 1 and 2 are incorporated herein by

   reference.

4. The arrearages claimed in Creditor/Respondent McKeesport Housing Authority's filed Proof of Claim include a total of $596.75 in court costs as follows:

| | | |
|---|---|---|
| 9/27/2023 | Court Costs | $189.06 |
| 11/08/2023 | Court Costs | $150.70 |
| 2/12/2024 | Court Costs | $256.99 |

5. However, the state court docket shows that Creditor/Respondent filed only one eviction case against the Debtor/Movant between September 2023 and February 2024.

6. In the only case filed by Creditor/Respondent against Debtor/Movant during the above time frame, Creditor/Respondent incurred a total of $253.95 in court costs. Exhibit B.

7. As the only court costs incurred by Creditor/Respondent during the time period covered by their filed Proof of Claim are $253.95, the claimed court costs of $189.06 and $150.70 should be disallowed and the claimed court costs incurred on February 12, 2024 should be reduced to $253.95.

**SECOND OBJECTION – Creditor/Respondent's claimed retroactive rent adjustment should be reduced to reflect the actual amount of Debtor/Movant's monthly rent during the adjusted period.**

8. The Debtor/Movant's responses in Paragraphs 1 through 7 are incorporated herein by reference.

9. Under the parties' June 2018 lease, Debtor/Movant must complete an annual recertification to determine her monthly rent amount. Exhibit C, page 4.

10. Once the annual recertification is complete, the parties' lease provides that the change in Debtor/Respondent's rent will take effect on Debtor/Respondent's annual recertification date rather than on the date the annual recertification is completed. Exhibit C, page 5.

11. Debtor/Respondent's annual recertification takes place in the month of April each year.

12. Creditor/Respondent's filed proof of claimed includes two "retro rent charges" totaling $2,593.00 that are meant to reflect the adjustment to Debtor/Movant's rent following the completed calculation of her annual recertification:

| | | |
|---|---|---|
| 10/23/2024 | Retro Rent Charge | $2,439.00 |
| 10/23/2024 | Retro Rent Charge | $154.00 |

13. According to the ledger attached to Creditor/Respondent's Proof of Claim, Debtor/Movant's monthly rent increased from $247.00 to $540.00 as a result of her annual recertification in April 2023.

14. The difference between Debtor/Respondent's pre-recertification rent of $247.00 and Debtor/Respondent's post-recertification rent of $540.00 is $293.00.

15. Adding this additional $293.00 to Debtor/Respondent's rent for this seven month period from April 2023 through October 2023 results in a total of $2,051.00 in arrears.

16. As such, Creditor/Respondent's claimed "retro rent charge" of $2,593.00 should be reduced to $2,051.00.

Respectfully submitted:

*/s/ Danielle Harrington*

Danielle Harrington
**Attorney for Debtors/Movants**
Pa. ID 331956
**Neighborhood Legal Services Association**
928 Penn Avenue
Pittsburgh, PA 15222
412-586-6182
harringtond@nlsa.us

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| In re: Yolanda Nicole McCoy | : | Case No. 24-21176 |
| | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| Yolanda Nicole McCoy | : | |
| | : | |
| Movant. | : | |
| | : | |
| v. | : | |
| | : | |
| McKeesport Housing Authority | : | |
| | : | |
| Respondent. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2024 I served or caused to be served the foregoing

Objection to Claim, proposed Order, and Notice of Hearing upon each of the following persons

and parties in interest at the following addresses:

<u>by first class postage prepaid mail:</u>

James E. Creenan, Esq.
Creenan & Baczkowski, PC
3907 Old William Penn Highway, Suite 304
Murrysville, PA 15668

<u>by notice of electronic filing:</u>
1. Ronda J. Winnecour, Chapter 13 Trustee
2. Office of the United States Trustee
3. James E. Creenan, Counsel for Creditor/Respondent

Respectfully submitted,

*/s/ Danielle Harrington*
Danielle Harrington

Attorney for Debtors/Movants
Pa. ID 331956
Neighborhood Legal Services Association
928 Penn Avenue
Pittsburgh, PA 15222
412-586-6182
harringtond@nlsa.us

# Exhibit A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Yolanda Nicole McCoy |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of Pennsylvania |
| Case number | 24-21176 |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

McKeesport Housing Authority
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

McKeesport Housing Authority
Name

2901 Brownlee Avenue, 2nd Floor
Number        Street

McKeesport          PA          15132
City          State          ZIP Code

Contact phone  412-673-6942

Contact email  jcreenan@cbattorneys.com

**Where should payments to the creditor be sent?** (if different)

_____
Name

_____
Number        Street

_____
City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____          Filed on _____
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____ 5,961.69 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Residential lease

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ 6,741.74

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/08/2024
                   MM / DD / YYYY

/s/ James W. Creenan
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | James W. Creenan | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Creenan & Baczkowski, PC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 3907 Old William Penn Highway, Suite 304 | | |
| | Number          Street | | |
| | Murrysville | PA | 15668 |
| | City | State | ZIP Code |
| Contact phone | 724-733-8832 | Email | jcreenan@cbattorneys.com |

# Tenant Balance Listing - Detail
to 07/01/2024

**McKeesport Housing Authority (C001)**

| Date | Code | Description | Reference | Charge | Credit | Balance |
|------|------|-------------|-----------|--------|--------|---------|
| **001003 031715** | | **Yolanda N McCoy** | | | | |
| 12/01/2022 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 1,123.99 |
| 12/19/2022 | 01-01 | RENT PAYMENT | 6358 | | 100.00 | 1,023.99 |
| 12/20/2022 | 13-50 | LATE CHARGE | | 10.00 | | 1,033.99 |
| 12/28/2022 | 01-01 | RENT PAYMENT | | | 345.00 | 688.99 |
| 01/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 935.99 |
| 01/11/2023 | 13-50 | LATE CHARGE | | 10.00 | | 945.99 |
| 01/17/2023 | 01-01 | RENT PAYMENT | | | 248.00 | 697.99 |
| 01/26/2023 | 01-07 | COURT COST PAYMENT | | | 29.21 | 668.78 |
| 01/26/2023 | 01-07 | COURT COST PAYMENT | | | 200.00 | 468.78 |
| 01/26/2023 | 01-05 | LATE CHARGE PAYMENT | | | 100.00 | 368.78 |
| 01/26/2023 | 01-04 | MAINTENANCE PAYMENT | | | 35.00 | 333.78 |
| 01/26/2023 | 01-02 | RETRO RENT PAYMENT | | | 114.00 | 219.78 |
| 01/26/2023 | 01-01 | RENT PAYMENT | | | 68.79 | 150.99 |
| 01/31/2023 | 12-18 | PEST CONTROL | ref 1/31/2/ | 35.00 | | 185.99 |
| 02/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 432.99 |
| 02/17/2023 | 13-50 | LATE CHARGE | | | 20.00 | 412.99 |
| 02/23/2023 | 01-07 | COURT COST PAYMENT | | | 85.00 | 327.99 |
| 02/23/2023 | 01-07 | COURT COST PAYMENT | | | 65.99 | 262.00 |
| 02/23/2023 | 01-04 | MAINTENANCE PAYMENT | | | 35.00 | 227.00 |
| 02/23/2023 | 01-01 | RENT PAYMENT | | | 227.00 | 0.00 |
| 02/23/2023 | 01-01 | RENT PAYMENT | | | 134.01 | -134.01 |
| 03/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 112.99 |
| 04/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 359.99 |
| 04/25/2023 | 01-01 | RENT PAYMENT | | | 300.00 | 59.99 |
| 05/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 306.99 |
| 05/16/2023 | 13-50 | LATE CHARGE | | 10.00 | | 316.99 |
| 06/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 563.99 |
| 07/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 810.99 |
| 07/26/2023 | 01-01 | RENT PAYMENT | | | 500.00 | 310.99 |
| 08/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 557.99 |
| 08/18/2023 | 13-50 | LATE CHARGE | | 10.00 | | 567.99 |
| 09/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 814.99 |
| 09/27/2023 | 09-00 | COURT COSTS | recert/ | 189.06 | | 1,004.05 |
| 10/01/2023 | 03-00 | DWELLING RENT CHARGE | | 247.00 | | 1,251.05 |
| 10/18/2023 | 13-50 | LATE CHARGE | | 10.00 | | 1,261.05 |
| 10/23/2023 | 03-02 | RETRO RENT CHARGE | ssi/ | 2,439.00 | | 3,700.05 |

# Tenant Balance Listing - Detail
**to 07/01/2024**

# McKeesport Housing Authority (C001)

| Date | Code | Description | Reference | Charge | Credit | Balance |
|------|------|-------------|-----------|--------|--------|---------|
| **001003 031715** | | **Yolanda N McCoy** | | | | |
| 10/23/2023 | 03-02 | RETRO RENT CHARGE | 4/2023 re-/ | 154.00 | | 3,854.05 |
| 11/01/2023 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 4,394.05 |
| 11/08/2023 | 09-00 | COURT COSTS | | 150.70 | | 4,544.75 |
| 11/14/2023 | 13-50 | LATE CHARGE | | 10.00 | | 4,554.75 |
| 11/15/2023 | 01-01 | RENT PAYMENT | 2438 | | 650.00 | 3,904.75 |
| 11/15/2023 | 01-01 | RENT PAYMENT | | | 740.00 | 3,164.75 |
| 12/01/2023 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 3,704.75 |
| 12/20/2023 | 13-50 | LATE CHARGE | | 10.00 | | 3,714.75 |
| 01/01/2024 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 4,254.75 |
| 02/01/2024 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 4,794.75 |
| 02/12/2024 | 09-00 | COURT COSTS | | 256.99 | | 5,051.74 |
| 02/13/2024 | 13-50 | LATE CHARGE | | 10.00 | | 5,061.74 |
| 03/01/2024 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 5,601.74 |
| 03/07/2024 | 13-50 | LATE CHARGE | | 10.00 | | 5,611.74 |
| 04/01/2024 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 6,151.74 |
| 05/01/2024 | 03-00 | DWELLING RENT CHARGE | | 540.00 | | 6,691.74 |
| 05/02/2024 | 12-18 | PEST CONTROL | 5/1/24 2 r/ | 50.00 | | 6,741.74 |
| 05/30/2024 | 03-01 | DWELLING RENT ADJUSTMENT | 4/1 re-exa/ | 22.00 | | 6,763.74 |
| 06/01/2024 | 03-00 | DWELLING RENT CHARGE | | 551.00 | | 7,314.74 |
| 06/18/2024 | 01-01 | RENT PAYMENT | | | 1,903.95 | 5,410.79 |
| 07/01/2024 | 03-00 | DWELLING RENT CHARGE | | 551.00 | | 5,961.79 |

**1 Tenant(s) Printed**

# RESIDENTIAL LEASE AGREEMENT (1/1/2014)

This RESIDENTIAL LEASE AGREEMENT ("Lease") is entered into this **29th**_____**DAY** of **MONTH June_YEAR 2018,** by and between the MCKEESPORT HOUSING AUTHORITY, 2901 Brownlee Street, 2nd Floor, McKeesport, PA, 15132 (the **"Landlord"**) **McKeesport Housing Authority** and (the "**Tenant**") **Yolanda McCoy** to the parties to this Lease, intending to be legally bound, agree to the following:

A.　　<u>Description of Premises</u>. Subject to the terms and conditions of this Lease and in consideration of the Rent (as defined below), the Landlord leases to Tenant and Tenant leases from the Landlord, that certain unit more _36-C Crawford Village

The foregoing unit shall include any steps, porch, hallway, lawn or yard adjacent to or surrounding the unit and/or any common interest therein or in any other common area (collectively, the "Unit"). The Unit shall be used solely as a private residence. The Landlord shall provide a stove and refrigerator for use on the Unit and at no additional cost to the Tenant. "Premises" is defined as the building or complex in which the Unit is located, including common areas and grounds.

B.　　<u>Family Composition</u>.

　　(i)　　The Unit is for the exclusive use and occupancy by the Tenant and the Household Member(s) of the Tenant listed below:

| NAMES | NICKNAME S/ ALIAS | RELATIONSHIP | S.S.# | BIRTHDATE | M/F |
|---|---|---|---|---|---|
| **Yolanda McCoy** | | HOH | ███ | | F |
| **Jamiesse Spruill-McCoy** | | Daughter | ███ | | F |
| ███████████ | | | | | |
| Londell Spruill-McCoy | | Son | ███ | | M |
| ------------------------ | | ---------- | ---------- | ---------- | -------- |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

　　(ii)　　No persons other than the Tenant and the Household Member(s) listed above are permitted to reside in the Unit unless added to the Lease with the prior written approval of the Landlord. This requirement does not apply to additions by reason of natural birth or adoptions. The Tenant shall, however, be required to provide the Landlord with written notice of any such addition, whether or not the Landlord's prior written approval is required. Any and all additions to the Household Member(s) of the Tenant including, but not limited to marriage shall be subject to standard criminal background check

procedures, a credit history report and previous landlord's inquiries. In addition, the Tenant must submit such proper documentation as may be required by the Landlord, including but not limited to, certificates and licenses prior to the Landlord's written approval of an addition to the Household Member(s) of the Tenant, in the event that such approval is required, or promptly after such an addition, in the event that such approval is not required.

(iii)  Household Member(s) may include children placed in long-term foster care, and essential live-in care for elderly, disabled or handicap persons.  However, the Tenant is obligated to obtain the prior written approval of the Landlord prior to moving such individual into the Unit.

<u>Vehicles</u>.  The Tenant shall be entitled to parking for no more than two (2) vehicles; provided that the vehicles are registered with the Landlord.  The Landlord reserves the right to assign parking spaces to the Tenant and/or restrict the type of vehicles permitted at the Community.  The Tenant's second vehicle may have to be parked off site, or in a McKeesport Housing Authority designated area.  Parking passes will be issued

## 1.  LEASE TERM

The term of the Lease shall be for one (1) year and it shall begin on the  <u>29th</u>  **day of June 2018** and shall terminate at midnight on the  <u>29th</u>  **day of June 2019**, provided, however, that so long as the Tenant is not in default hereunder and in the absence of a notice by the Tenant to terminate, as provided for in Paragraph 15, the Lease will automatically be renewed for the successive terms of one (1) year each upon payment by the Tenant of the Rent, as defined herein on the first month following the yearly anniversary hereof.

## 2.  RENT

A.    <u>Monthly Rent</u>.  Tenant agrees to pay monthly rent in the amount of <u>$    </u>shall be made by check, money order, or credit as set forth in Section 3©.

RENT SHALL BE PAID IN ADVANCE, WITHOUT DEMAND, DEDUCTION OR SETOFF ON THE FIRST (1st) DAY OF EACH MONTH DIRECTLY TO THE LANDLORD.

If Tenant's obligation to pay Rent commences on a day other than the first day of a calendar month, Tenant shall pay to Landlord a pro rata portion of the monthly installment of Rent, such pro rata portion to be calculated based on the number of days remaining in such partial month.

B.    <u>Maintenance Charges</u>: The cost of services or repairs due to intentional or negligent  damage to the dwelling unit, common areas or grounds beyond normal wear or tear, caused by tenant, household members or by guests.  When the MHA determines that needed maintenance is not caused by normal wear and tear, tenant shall be charged with cost of such service, either in accordance with the schedule of maintenance charges posted by MHA or (for work not listed on the schedule of maintenance charges) based on the actual cost to MHA for labor and materials needed to complete the work.  If overtime work is required, overtime rates will be charged.

C.    <u>Administrative Fee</u>.  If the Landlord does not receive the Rent by the 5th day of the month a $10.00 administrative fee ("Administrative Fee") shall be charged for each month that the rent is due and not paid by the (5th) day of that month,  (5th) day falls on a weekend or holiday, the Administrative Fee will be assessed on the next business day),

TENANT INITIALS *VM LM*

## SECURITY DEPOSIT

C.  **Deposit.**  To secure the Tenant's faithful performance of all material terms of this Lease, the Tenant shall deposit with the Landlord at the time of execution of the Lease, a security deposit ("Deposit") in the amount of one month of the total tenant payment. In the event that the TTP is under $100.00 dollars the security deposit will be $99.00  (Tenants who have paid a lesser amount to the Landlord under a previous Lease are considered to have fully met this obligation).

E.  **Use of Deposit.**  This Deposit may be used to cover any unpaid rent owed to the Landlord at the time of Lease termination, or to reimburse the Landlord for the cost of repairing any damages to the Unit caused by the willful conduct or negligence of the Tenant, the Tenant's family or guests or that is otherwise attributable to the Tenant.  The Deposit may not be used to cover unpaid Rent or other charges while the Tenant continues to occupy the Unit.

F.  **Return of Deposit.**  At the time of termination of this Lease, Landlord shall return the balance of the Deposit to the Tenant within thirty (30) days of the Unit becoming vacant provided that the Tenant provides the Landlord with a forwarding address in writing.  The Landlord will also send the former resident a written statement of any costs for damages and/or other such charges for which said Deposit was utilized, in accordance with Pennsylvania law, as long as the Tenant has provided, in writing, the Landlord with a forwarding address.

## 3.  **UTILITIES**

A.  **Landlord Supplied Utilities.**  The Landlord shall supply, at Landlord's cost, those utilities as indicated by an [x]:
_____ [ x ] electricity,  [ x ] gas,  [ x ] water and sewer,  [ x ] heat,  [x ]  refuse collection.

Tenant will pay for all other appliance charges as posted.

In the event that the Landlord deems Tenant's utility usage excessive in the Landlord's sole and absolute discretion, the Tenant will be required to reimburse the Landlord any monies above that use which is deemed reasonable in the Landlord's sole and absolute discretion.

B.  **Use.**  Utilities shall be used for normal household purposes only.

C.  **Interruption of Service.**  This Lease shall not be affected and there shall be no excuse not to pay Rent or other payments and no constructive eviction shall be claimed or allowed because of interruption or curtailment of any services or utilities in or to the Unit from causes beyond the Landlord's control.

D.  **In the event that the dwelling unit is individually metered for utilities, the allocation for each shall be:**

| Type | Community | Gas | Electric | Water | Sewage |
|------|-----------|-----|----------|-------|--------|
| Ranch Style 2 Bedroom | Locust Street | 95 | 39 | 31 | 23 |

| Ranch Style 3 Bedroom | Locust Street | 106 | | | 25 |
| 2 Story- 2 Bedroom | Locust Street | 100 | 39 | 31 | 23 |
| 2 Story – 3 Bedroom | Locust Street | 122 | 50 | 46 | 25 |

**Any amount over and above shall be the responsibility of the tenant.**

**4.** **MAINTENANCE AND REPAIRS**

A. <u>Request for Maintenance and Repairs</u>. The Tenant must request maintenance or repairs by telephone to the Maintenance Department of Landlord. During non-business hours, emergency repairs may be requested by telephoning the Landlord or its designee at (412) 673-6942. In the event that the emergency service number changes, the Tenant should contact the Landlord during regular business hours at (412) 673-6942 for the correct telephone number.

B. <u>Landlord/Tenant Responsibilities</u>. At Tenant's request, the Landlord shall provide normal maintenance and repair of the Unit. The Tenant shall be responsible for and shall pay, upon demand therefor, reasonable charges for the repair of damage beyond normal wear and tear, which is negligently or intentionally caused by the Tenant, Household Member(s) of the Tenant or guests of the Tenant. Repair charges shall be established by the Landlord in a Schedule of Tenant Charges. The Schedule of Tenant Charges is the list that shows the costs of specific repairs, and is available at the Landlord's offices. All such charges shall be deemed to be Rent.

C. <u>Accidents</u>. Charges will also be assessed to the Tenant to pay for damages caused by fire, smoke, and other related charges that are a result of negligence on the part of the Tenant, Household Member(s) of the Tenant or guests of the Tenant as determined by the Fire Department or Landlord. Such water used to extinguish fire and other related charges shall be calculated in the amount of the replacement cost, actual cost or the deducible amount on the Landlord's fire insurance, if any, whichever is less. Such charges must be paid within sixty (60) days from the date in which the charges are incurred by the Landlord. The Tenant may be given the option of entering into a reasonable payment agreement for said charges. Failure to pay such charges by the due date or in accordance with such payment agreement shall be considered a breach and grounds for termination of this Lease. All such charges shall be deemed to be Rent.

The Tenant will do nothing and permit nothing to be done on the Unit, which will contravene any fire or other insurance policy covering the same.

TENANT'S INITIALS _YM YM_

**5.** **REDETERMINATION OF ELIGIBILITY, RENT OR DWELLING SIZE**

A. <u>Annual Re-certifications</u>. At the time of the Tenant's annual review, the Landlord will send the Tenant a Personal Declaration and an Application for Continued Occupancy or similar form ("Declaration"). The Tenant is required to return the completed Declaration to the Landlord. The Tenant shall, together with its Submission of the Declaration elect to either pay the flat rent for the Tenant's Unit ("Flat Rent") or income based rent. If the Tenant elects income based rent, the Landlord shall verify each household's income in order to determine the appropriate Rent. In accordance with these procedures, the

Landlord may require the Tenant to furnish verifications; provided however, that verifications pertaining to public assistance and employment may be obtained directly by Landlord.

The Tenant is required to provide complete and accurate information necessary for the Landlord to determine eligibility, whether the Rent shall be the same, and appropriateness of dwelling size in accordance with the Landlord policies governing admissions and continued occupancy.

(1)     The new Rent charged as a result of the annual re-examination of Rent will take effect on the Tenant's annual re-examination date.

(2)     The Tenant is obligated to return the completed Declaration within the applicable time period.

B.   Interim Rent Redetermination.  The Tenant is obligated to report any changes in income or family composition within ten (10) business days of such change.

(1)     Increase in Income.  Tenants are required to report all income increases within 10 days of said change.

(2)     Decrease in Income.  In the event of a decrease in income the Tenant must provide all documentation concerning the decrease to the Landlord within 10 days.  If the information is submitted on time, the new Rent will become effective the first (1st) day of the month following the Tenant's reporting.  If the information is submitted late, the Rent will not change until the first (1st) day of the month following the Tenant's reporting.  No retroactive adjustments will be made if a Tenant fails to submit information on time.

Rent may  be increased in the event that said increases are required by changes in U.S. Department of Housing and Urban Development ("HUD") regulations.

TENANT'S INITIALS _____

# 6.  COMMUNITY SERVICE REQUIREMENT

A.  Tenant and each adult member of Tenant's Household as set forth in Section 1.B.(1) shall:

(1)     Contribute eight (8) hours per month of community service (not political activity); or

(2)     Participate in eight (8) hours in an economic self-sufficiency program, (defined as any program designed to encourage, assist, train, or facilitate, the economic independence of participants and their families or to provide work for participants including programs for job training, employment counseling, work placement, basic skills training, education, workforce, financial or household management apprenticeship).

B.     The foregoing requirement shall not apply to a resident who:

(1)     is 62 years of age or older;

(2)     is a blind or disabled individual, as defined under section 216(I)(1) or section 1614 of the Social Security Act (42 U.S.C. §416(i)(1); 1382c), and who is unable to comply with this section, or is a primary caretaker of such individual;

(3)  is engaged in a work activity (as such term is defined in section 407(D) of the Social Security Act (42 U.S.C. §607(d), as in effect on and after July 1, 1997);

(4)  meets the requirements for being exempted from having to engage in a work activity under the State program funded under Part A of Title IV of the Social Security Act (42 U.S.C. §601 et seq.) or under any other welfare program of the Commonwealth of Pennsylvania, including a State-administered welfare-to-work program; or

(5)  is in a family receiving assistance under a State program funded under Part A of Title IV of the Social Security Act (42 U.S.C. §601 et seq.) or under any other welfare program of the Commonwealth of Pennsylvania, including a State-administered welfare-to-work program, and has not been found by the State or other administering entity to be in compliance with such program.

C.  If the Landlord determines at the annual review, which shall take place at least thirty (30) days prior to the expiration of the Lease, that Tenant has not complied with Paragraph 8(A) of this Lease, the Landlord shall:

(1)  notify Tenant of noncompliance;

(2)  notify Tenant that Tenant may file a grievance regarding the determination of noncompliance; and

(3)  notify Tenant that unless Tenant enters into an agreement with the Landlord prior to expiration of the Lease term, which agreement shall provide that the Tenant cure any noncompliance with Section 8(A) by participating in an economic self-efficiency program or contributing to community service as many additional hours as the resident needs to comply in aggregate over a twelve (12) month term of the Lease; then the Tenant's lease shall not be renewed.

D.  IF TENANT FAILS TO COMPLY WITH REQUIREMENTS OF SECTION 8(A) AND FAILS TO ENTER INTO AN AGREEMENT AS SET FORTH IN SECTION 8(C)(3) WITH THE LANDLORD PRIOR TO EXPIRATION OF THE LEASE, THEN THE LEASE SHALL NOT BE RENEWED AND THE TENANT SHALL BE EVICTED.

TENANT'S INITIALS *YM LM*

## 7. TENANT OBLIGATIONS

In addition to the other obligations under this Lease, Tenant agrees that failure to comply with the following provisions shall be a material breach of the Lease:

A. <u>Use</u>.  To use the Unit solely as a private dwelling for the Tenant and Household Member(s) of the Tenant as named in this Lease and not to use or permit the use of the Unit for any other purpose.

B. <u>Assignment/Subletting</u>  Tenant shall not sublease or assign this Lease.

C. <u>Boarders/Lodgers</u>.  Tenant shall not provide accommodations for boarders and/or lodgers.

D. <u>Overnight Guests.</u>  Tenant may reasonably provide accommodations to his/her guests or visitors for a period not to exceed fourteen (14) days per calendar year; provided that the Tenant must complete a visitor form at the Management Office prior to allowing any overnight guests.  A guest is someone who is present

in the Unit with the consent of the Tenant or another Household Member. Permission to permit a guest to remain in the Unit in excess of fourteen (14) days in any calendar year shall not be unreasonably withheld by the Landlord. Requests to allow a guest to remain in the Unit beyond thirty (30) days shall be referred to the Landlord for special consideration (i.e. Long term foster care or medical care of a non-resident member of the Tenant's family). This limitation does not apply to any live-in aide for the Tenant or a Household Member(s) of the Tenant.

E. <u>Rules and Regulations</u>. Tenant agrees to abide by such necessary and reasonable rules and/or regulations promulgated by the Landlord for the benefit and well being of the housing community and its tenants. Any such rules and/or regulations shall be posted in each community by the Landlord, and shall be incorporated herein by reference. Current rules and regulations are attached here to as part of the lease.

(1)    Tenant shall not use waterbeds or any other water filled furniture.

F. <u>Compliance with Laws</u>. Tenant shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force and with the requirements of any board of fire underwriters or other similar bodies now or hereafter constituted relating to or affecting the condition, use or occupancy of the Unit.

G. <u>Maintenance</u>. Tenant agrees to maintain the Unit, which includes stairwells and hallways, common areas as assigned, and the appliances assigned to the Tenant for the Tenant's exclusive use in a decent, safe, clean and sanitary condition. To cooperate with the Landlord in maintaining yards assigned to the Tenant in a neat and orderly manner. To pick up and remove trash and to dispose of garbage, rubbish and other waste in a sanitary and safe manner. The Tenant is also required to remove ice and snow from the area immediately in front of the dwelling units. In Scattered Site units, this will be the responsibility of all tenants residing in the building. If the Tenant is unable to perform the above tasks due to age or disability, as recognized by the Landlord in writing, the Tenant shall be exempt from this provision.

TENANT'S INITIALS ____

H. Conduct of Tenant

(1) Upon signing of this lease, the MHA shall deliver to the Tenant a copy of its rules, which are part of this lease, regarding the conduct of the tenant and household members and the use and treatment of the unit and premises. The Tenant agrees that the Tenant and household members shall comply with these rules and any amendments of the rules. The Tenant further agrees that the Tenant and other members of the household:

a. Shall not disturb other residents and shall prevent disturbance of other residents by guests, visitors, or other persons under the control of household members;

b. Shall not damage or destroy the dwelling unit or premises, and shall prevent such damage or destruction by guests, visitors or other persons under the control of household members;

c. Shall not engage in criminal activity in the dwelling units or premises and shall         prevent criminal activity in the unit or premises by guests, visitors, or other persons under the control of household members.

d. Shall not commit any fraud in connection with any federal housing assistance

program; and

    e. Shall not receive assistance for occupancy of any other unit assisted under federal, state or local housing assistance program during the term of the lease.

    f. Shall not store, keep or use any firearm on public housing premises.

(2)    The MHA has adopted the policy of "One Strike and You're Out" in regard to illegal drug activity, violent activity as a result of alcohol abuse, and other criminal activity that threatens the well being of residents or employees of the MHA.

    (a).   THE COMMISSION OF ANY CRIMINAL ACT OF PHYSICAL VIOLENCE TO PERSONS OR PROPERTY ON OR OFF THE PREMISES WHERE THE DWELLING UNIT IS LOCATED, OR THE ILLEGAL USE, SALE OR DISTRIBUTION OF NARCOTICS ON OR OFF SAID PREMISES, BY THE TENANT OR A MEMBER OF THE TENANT'S HOUSEHOLD, CONSTITUTES A SERIOUS VIOLATION OF THIS LEASE AND SHALL BE GROUNDS FOR TERMINATION OF THIS LEASE.

    (b).   The tenant, any member of the Tenant's household, or a guest or other person under the Tenant's control shall not engage in criminal activity including drug-related criminal activity, on or off public housing premises and such criminal activity shall be cause for termination of tenancy.

    The term "drug related criminal activity" means the illegal manufacture, sale, distribution, use or possession with the intent to manufacture, sell, distribute or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act 21 U.S.C. 802)

    (c).   Any drug related criminal activity, including but not limited to, the presence of an illegal controlled substance on or off the Premises. The physical presence of the controlled substance rather than actual ownership of the drugs shall constitute a material breach of this Lease and amount to grounds for immediate Lease termination in compliance with Pennsylvania law.

    (d).   Any illegal use (or pattern of illegal use) of a controlled substance, or any abuse (or pattern of abuse) of alcohol or any criminal activity of any kind that threatens the health, safety or right to peaceful enjoyment of the Landlord's property by other tenants or employees of the Landlord;

3.    To comply with the requirements of applicable state and local building or housing codes, materially affecting health and or safety of tenant and household.

4.    To keep the dwelling unit and other such areas as may be assigned to tenant for exclusive use in a clean and safe condition. This includes keeping front and rear entrances and walkways for the exclusive use of the tenant free from hazards and trash keeping the yard free of debris and litter. Exceptions to this requirement may be made for tenants who have no household members able to perform such tasks because of age or disability.

5.    To dispose of all garbage, rubbish and other waste from the dwelling unit in a sanitary and safe manner only in containers approved or provided by the MHA. To refrain from and cause members of tenants household or guests to refrain from littering and or leaving trash and debris in common areas.

**J.I** **Quiet Enjoyment.** To behave and cause Household Member(s) and Guests to act in such a manner which will not disturb other tenant's peaceful enjoyment of their accommodations or community facilities; to refrain from illegal or other activities which would impair the physical or social environment of the community or Scattered Site (such specifically prohibited activity shall include, but is not limited to, selling alcoholic beverages from the unit or illegal gambling on the Landlord's property); and to act in such a way as to positively contribute to maintaining the development of the community or Scattered Site in a decent, safe and sanitary condition.

K. **Misuse of Utilities.** To use electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities including elevators in a reasonable manner, and for its intended purpose.

L. **Damage to Unit.** To refrain from and to prevent Household Member(s) under the Tenant's control from destroying, defacing, damaging and/or removing any part of the Unit, community buildings, facilities or property located in common areas.

M. **Alterations.** To obtain the prior written consent of the Landlord to make repairs, alterations, or install equipment in the Unit or common areas.

N. **Request for Maintenance.** To notify the Landlord immediately of the need for repairs to the Unit and of any unsafe conditions on the Unit or grounds which might lead to injury or damage.

O. **Pets.** To comply with the Landlord's Pet Policy. This policy prohibits the ownership and/or presence of any animals on or near the Unit, except as may be set forth on the Pet Rider attached hereto. Any violation of this provision shall constitute ground for Lease termination and costs shall be imposed on residents for removal of the Tenant's pet. Visiting pets are not permitted to enter Unit for any reason.

 This policy does not apply to animals that assist, support, or provide assistance to persons with disabilities.

P. **Vehicle Registration.** Tenant agrees to register all vehicles owned and operated by the Tenant, Household Member(s) of the Tenant and Guests of the Tenant with the Landlord. Tenant shall register any new vehicle with Landlord immediately upon its entry upon the Premises. In addition, the Tenant is not to keep or maintain any inoperable vehicle, or a vehicle without a valid and current driver's license, license plate or inspection sticker, in the development parking areas. The Landlord, in conjunction with the local municipality will arrange for the removal of all illegally parked vehicles in accordance with state and local statutes. All vehicles must display a MHA parking permit in the window.

Q. **Locks.** Not to change any locks on the Landlord's property.

R. **Landlord Entry.** The Tenant must allow the Landlord to enter the Unit for all repairs.

S. **Transfer.** When a change in family composition justifies the need for transfer under Landlord's occupancy standards, the Tenant agrees to transfer to an appropriately sized dwelling unit, which meets the applicable habitability standards. The Landlord will make a good faith effort to transfer the Tenant within the same development or scattered site neighborhood. The Tenant shall be given thirty (30) days' advance written notice of the availability of a suitably sized unit prior to being required to move. The Tenant's response to the transfer offer must be received within five (5) days of receipt and must state the Tenant's willingness to move to an appropriately sized unit within fifteen (15) days. Tenants who reject a transfer to an appropriately sized unit must state specific good cause reason(s). In

the event that the reason is sufficient enough to reject the unit the Tenant will still be required to move to another appropriately sized unit after one is assigned. Failure to respond to an offer within five (5) days will be considered a rejection and grounds for Lease termination. All costs associated with the move will be the responsibility of the Tenant; however, the Landlord may provide movers for elderly and handicapped residents who are required to move as a result of being overhoused/underhoused.

The Tenant further agrees to accept a new Lease for a dwelling unit of the appropriate size. Failure to accept an appropriately sized unit without demonstrating good cause for rejection within five (5) days of receipt of the offer shall constitute a material breach of this Agreement and grounds for termination of this Lease.

The tenant agrees to move to another unit if it is determined necessary to rehabilitate or demolish tenant's unit.

Nothing in the provisions of the Lease is intended to deny the Tenant's the benefits of State or Local ordinances.


## 8. LANDLORD OBLIGATIONS

In addition to the other obligations under this Lease, the Landlord agrees to perform the following:

A. <u>Maintenance</u>. Maintain the Unit, building facilities, common areas and grounds, not otherwise assigned to Tenant for maintenance and upkeep, in a decent, safe and sanitary condition.

B. <u>Repairs</u>. Make needed repairs promptly by responding within twenty-four (24) hours of receiving an emergency repair request and within a reasonable time for regular repair requests.

    (1) Provide inspection of the Unit by the Landlord or qualified maintenance staff.

    (2) Complete and process all necessary work orders required to initiate the correction of the condition in a timely manner. The Landlord shall complete the remaining repairs and all non-emergency repairs in an adequate, competent and professional manner, as soon as practicable following the inspection date. If the work cannot be completed within that time frame, the Landlord shall immediately issue a repair schedule providing for the completion of the work in a prompt and reasonable time period with a copy given to the Tenant. Tenant may request a grievance hearing to challenge the reasonableness of the repair schedule or if the repairs are not completed within the time scheduled for them.

    (3) Adequately complete repairs needed to make safe any hazardous or emergency conditions related to the repair request.

C. <u>Compliance with Laws</u>. Comply with requirements of applicable building codes, housing codes and HUD regulations.

D. <u>Garbage</u>. Provide and maintain appropriate receptacles and facilities (except containers for exclusive use of an individual Tenant) for the deposit of garbage, rubbish and other waste removed from the Unit by the Tenant.

E. <u>Maintain Utilities.</u> Maintain in good and safe working condition electrical, plumbing, sanitary, heating, ventilating, appliances, elevators and other facilities that are supplied or required to be supplied by the Landlord.

F. <u>Pre-occupancy Inspection.</u> The Landlord and the Tenant will inspect the Unit prior to occupancy by the Tenant. The Landlord will give the Tenant a copy of the inspection form showing the condition of the Unit, interior and exterior, as applicable, and any equipment provided with the Unit. The inspection form shall be signed by the Landlord and Tenant and a copy of the form shall be given to Tenant and retained in the Tenant's folder. Any deficiencies noted on the inspection form will be corrected by the Landlord before the Tenant moves in, and at no charge to the Tenant.

G. <u>Post-occupancy Inspection.</u> The Landlord will inspect the Unit at the time Tenant vacates the Unit and give the Tenant a written statement of the charges, if any, for which the Tenant is responsible. The Tenant and/or the Tenant's representative and/or Resident Council President may join in such inspection, unless the Tenant vacates without notice to the Landlord.

## 11 DEFECTS HAZARDOUS TO LIFE, HEALTH AND SAFETY

A. Tenant's Notice. When conditions are created on the Unit, which create a danger to the life, health and/or safety of the residents, the Tenant shall immediately notify the Landlord of the condition. The Landlord shall be responsible for repair of the Unit, as stated in Section 6(B). If the damage was caused by Tenant, Household Member(s) of Tenant or Guests of Tenant under his/her control, the reasonable cost of repair shall be charged to the Tenant.

H. Relocation. If repair cannot be made within a reasonable time, the Landlord shall provide standard alternative accommodations, to the extent that such accommodations are available.

## 12 ENTRY OF UNIT DURING LEASE TERM

A. <u>Inspections/Maintenance.</u> The Landlord shall have to right to enter the Unit upon providing at least (48) hours' written notice delivered to Unit stating the purpose of the entry, between the hours of 8:00 a.m. and 4:30 p.m. to perform routine inspections and maintenance, or to make improvements or repairs for pest control purposes, or to determine if the Tenant still occupies the Unit when reasonable doubt exists. However, the Landlord may enter the Unit at any time without advance notice when there is reasonable cause to believe that an emergency exists.

If Tenant or another adult Household Member is not available at time of entry, the Landlord shall leave a written statement as to the date, time and purpose of such entry.

B. <u>Failure to Permit Entry.</u> Failure to allow the Landlord or its independent contractors entry into the Unit for any of the reasons indicated in paragraph 11(A) shall be of the Lease.

## 13 DEFAULT BY LANDLORD

The Landlord shall be in default under this Lease if the Landlord materially failed to perform its obligations under this Lease. If the Landlord is in default, Tenant may file a grievance, terminate this Lease by giving notice as described in Section 17(A), or exercise any other rights permitted by state law.

## 14. GRIEVANCE

Subject to HUD rules and regulations, and any provisions contained in this Lease, the Tenant may be entitled to a grievance hearing to resolve any disputes concerning the obligations of Tenant or the Landlord under the terms of this Lease or any action or inaction by the Landlord. Tenants are not eligible for a grievance hearing when their eviction is for drug-related or violent criminal activity. The grievance will be heard in accordance with the Grievance Procedures established by the Landlord from time to time. A copy of the current Grievance Procedure is available at the Landlord's Office.

## 15. TERMINATION OF TENANCY

1. The Tenant may terminate this Lease at any time by giving thirty (30) days written notice. The notice of intent to vacate must be signed and delivered by the Tenant to the community rental office where the Tenant resides. Rent shall be due and owing up to and including the expiration of the thirty (30) days' notice. If no notice is given, rent shall be due and owing up to and including the day the MHA shall obtain legal possession of the apartment. The Tenant must return keys on the day of vacating.

2. The McKeesport Housing Authority may also terminate the lease for good cause, which shall be but not limited to:

a.    Failure to pay rent or other charges when due

b.    Repeated breach of the rules and regulations of the MHA;

c.    Failure to supply required documents, certifications, or other information;

d.    Fraud in application for rent;

e.    Unauthorized occupants in dwelling unit;

f.    Refusal to move to another unit authorized under the terms of this lease;

g.    Lack of adequate housekeeping resulting in hazards to adjoining Tenants and/or employees (see Attachment, Part III).

h.    Criminal activity under paragraph H of this lease.

i.    Flight to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime that is a felony under Pennsylvania law.

j.    Alcohol abuse interfering with the health, safety, or right of peaceful enjoyment of the premises by other Tenants.

k.    Engage in domestic violence, dating violence or stalking.

3. The MHA shall give the Tenant reasonable notice of a termination of the Lease.    When the health or safety of other residents or of MHA employees is threatened and any criminal activity under the "one strike and you're out policy", only fifteen (15) days notice shall be given to the Tenant. Where termination is for non-payment of rent (15) days notice shall be given to the Tenant. In any other case, the Tenant shall receive thirty (30) days notice.

4.   Management will not terminate or refuse to renew the Lease and will not evict a tenant or a member of tenant's household from the dwelling unit if the tenant or household member is a victim of actual or threatened "domestic violence, dating violence or stalking" as those terms are defined by the MHA in its admissions and occupancy policies.

5.   Pursuant to federal law, management may bifurcate this Lease in order to evict, remove, or terminate the assistance to any person who is a Tenant or a lawful occupant under this lease when such person engages in criminal acts of physical  violence against family members or others, on or off the premises. Management may take such action without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such violence who is the Tenant or is a lawful occupant under this Lease.

6.   Notwithstanding anything to the contrary contained in paragraphs 4 and 5 above, Management may terminate the Lease and evict the Tenant  if it can demonstrate an actual and imminent threat to other tenants or to those employed at or providing service to the development in which the unit is located, if the tenant's tenancy is not terminated.

7.   Tenant shall be required to complete a certification of domestic violence, dating violence, or stalking.

8.   Nothing in this section shall prohibit Management from terminating the Lease and evicting the Tenant based on a violation of this Lease not involving domestic violence, dating violence, or stalking against Tenant or household member.

## 16.    NOTICES

Any notice to MHA must be in writing, delivered to the management office in Tenant's community or sent by prepaid first class mail, properly addressed.Notice to the Tenant must be in writing, delivered to Tenant or to any adult member of the household residing in the dwelling unit, or sent by first-class mail addressed to Tenant.

## 17.    MOVE-IN AND MOVE-OUTS

(a)    Move-in Inspection: MHA and Tenant or representative shall inspect the dwelling unit prior to occupancy Tenant.  MHA will give Tenant a written statement of the condition of the dwelling unit, both inside and outside, and note any equipment provided with the unit.  The statement shall be signed by MHA and Tenant and a copy of the statement retained in tenant's folder . MHA will correct any deficiencies noted on the inspection report, at no charge to Tenant.

(b)    Move-out Inspection – MHA will inspect the unit at the time Tenant vacates and give Tenant a written statement of the charges, if any, for which Tenant is responsible.  Tenant and/or representative may join in such inspection, unless Tenant vacates without notice to MHA. The Tenant shall be liable for all court costs, and attorney's fees actually expended in a legal action for enforcement of this Lease Agreement unless the Tenant prevails.

## 18.    EVICTION

The Tenant shall be liable for all court costs.

## 19.    ENTIRE AGREEMENT

A.    Entire Agreement.  This Lease and all policies, rules and schedules that have been incorporated by reference, constitute the entire agreement between the Landlord and Tenant.  Any amendment, change or addition shall be made only in writing and signed by both parties except for Redetermination of Eligibility, Rent or Dwelling Size.

A. Modifications.  This Lease and all policies, rules and/or schedules referred to in this Lease may be modified provided the Landlord gives at least thirty (30) days' written notice to Tenant explaining the modification and giving Tenant the opportunity to comment.  Written comments will be considered by the Landlord prior to the proposed modification becoming effective.  A copy of the proposed modification shall be personally delivered or mailed to each Tenant or posted in at least three (3) conspicuous places within each building in which the affected dwelling units are located.  A copy will also be posted in a conspicuous place at the Landlord's office or similar central business location within the community.

## 20. INVALIDITY OF PROVISION

I.   If any provision of this lease is found invalid, the remaining provisions of the Lease shall remain valid and enforceable. IN WITNESS WHEREOF, intending to be legally bound, the parties hereto have caused these presents to be duly executed on the day and year first above written.

Tenant Signature: _____    Date: 6~29-18

Print Name: _____

Tenant Signature: _____    Date: _____

Manager Signature: _____    Date: 6/25/21

**PET RIDER TO LEASE APT:** <u>36-C Crawford Village</u>

This Rider is made and entered into by and between McKeesport Housing Authority (the "Landlord") and **Tonia Kifer** (The "Tenant") for attachment to the Lease by and between Landlord and Tenant, dated **June 29, 2018** (the "Lease").

This Rider is incorporated into and constitutes an integral part of the Lease to which it is attached. The terms used herein, which are defined or specified in the Lease, shall have the meanings indicated in the Lease where the context permits unless otherwise indicated herein, and definitions of terms set forth herein shall apply to the Lease where the context permits. If there are any inconsistencies between the provisions of this Rider and the provisions of the Lease, the provisions of this Rider shall c o n t r o l.
Any violation of this Rider shall constitute a material breach of the Lease.

## DEFINITION OF PET AND NUMBER PER UNIT

A common household pet is defined as a domesticated animal, such as a dog, cat, bird, rodent, fish or turtle that is traditionally kept in the home for pleasure rather than for commercial purposes. <u>Aquariums cannot be larger than 30 gallons.</u> Some breed specific animals may be barred for i n s u r a n c e coverage purposes, pit-bull dogs, Rottweiler's, Doberman pinchers, akitas, or chows. One pet permit will be issued per unit.

PRE-REGISTRATION REQUIRED PRIOR TO ADMISSION

No less than ten (10) days before pet is to be brought into the building, such pet must be registered with the Landlord by the Tenant delivering to the Landlord the completed Pet Registration form attached as Exhibit I. Registration must show type of pet, recent picture, name, age, and if applicable, license number and current inoculation information, name and address of pet's veterinarian, plus a signed responsibility card showing the name of three (3) persons to call to come get the pet in the event of the Tenant's illness or death (see Section 3). Pet registration must be updated annually.

If the Tenant fails to provide complete pet registration information or fails to update the pet registration annually, the pet will not be permitted on the Premises.

## REQUIRED UPDATE OF REGISTRATION

Each pet's registration must be updated once each year at the time of the annual re-certification.

-Verification that the pet's license is in effect and has been renewed for the current year

-Proof of any inoculations that are required for such pet, that all shots are current; and

## PET RESPONSIBILITY C A R D

Prior to pet admission, the Tenant must fill in and sign a written responsibility for showing the name, address, and phone number of three (3) local persons who will come and get the pet in the event of the Tenant's illness, vacation, or death. This must be updated ye a r l y.

## SECURITY DEPOSIT-

Unless otherwise proscribed by the HUD, a Pet Security Deposit will be required of dog and cat owners in the amount of $ 99.00 payable as follows: A payment plan may be established. The Landlord will refund any unused portion of the Pet Security Deposit within a reasonable time after the Tenant moves from the building provided that Tenant leaves a forwarding address in writing and no damages have occurred

## PETS - GENERAL CONDITIONS

The Tenant agrees to comply with these rules and the violation of these rules shall be grounds for removal of the pet or termination of the Tenant's tenancy, or   both.

-Only 1 pet is allowed in the elevator at a time.

-No pet may be left unattended, whether tied or tethered, outside of the Tenant's unit or    building.

-Pets are never permitted in the building's public rooms such as the offices, laundry room, lounges, or community rooms. This does not apply to service   animals

-Apartments, patios, balconies and hallways must be kept clean and free of hair, feathers, seeds, droppings, urine, feces and odors at all times.

-Costs of extermination from fleas, ticks, or other animal related pests caused by a tenant's pet will be the responsibility of such tenant.

-Tenants shall not permit any disturbance by their pet, which would interfere with other tenants' quiet enjoyment of their accommodations. This includes disturbances such as loud barking, howling, scratching, whining, loud chirping, yowling, screeching, or other such activities.

## Pet Waste

Pet Waste must be properly disposed of as specified in the specific pet regulations applying to the type of pet in  question.

## Pet owner removing pet from apartment.

Whenever a pet is out of the apartment or house for any reason, such pet will be confined in some way so that it does not become loose in the building. Recapture of a loose pet is the sole responsibility of the Tenant.   The Landlord will not be involved or take responsibility for such   recapture.

Pets cannot be tied or left unattended outside of the Tenant's unit.

## VISITING PETS

Visiting pets are not permitted unless they are dog's service dogs with proper    documentation

## PROTECTION OF THE PET

If the health or the safety of a pet is threatened by the death or incapacity of the Tenant or by other factors that render the Tenant unable to care for the pet, the Landlord will contact one of the three persons listed on the Pet Responsibility Card.  If none of these 3 responsible people are willing or able to care for the pet, or after reasonable efforts the Landlord has been unable to contact one of the three persons, the Landlord will contact the appropriate state or local agency and request removal of such pet.   If there is no state or local agency authorized to remove a pet under these circumstances, the Landlord or its designee will enter the Tenant's unit, remove the pet, and place it in the Animal Rescue League for    permanent disposition.

## OWNER'S ABSENCE

If the Tenant is temporarily absent such as in the hospital or on vacation, the Landlord must be notified as soon as possible before the Tenant leaves with the name of the person who will take total responsibility to regularly care for the pet until the Tenant   returns.

Failure to abide by the above regulations will cause the Landlord to arrange for removal and care of the pet as stated in Section 9, with the cost for such care the full responsibility of the   Tenant.

## PET VIOLATIONS

**-Loose Pets** - If a pet gets loose and out of the Tenant's Premises, the Tenant, and not the Landlord is responsible for damages and recapture.  The Tenant will immediately clean up any waste and pay the cost of any damages incurred within 5 days of presentation of the bill from the Landlord or another tenant if they or their property is involved.

**-Notice of Pet Rule Violation.** If the Landlord determines on the basis of objective facts, supported by written statements, that the Tenant has violated a rule governing the keeping of pets, the Landlord will serve a notice to the Tenant of pet rule violation.     The notice of pet rule violation will be in writing and will:

-Contain a brief statement of the factual basis for the determination and the pet rule or rules alleged to be violated;

-State that the Tenant has 10 days from the effective date of service of the notice to correct the violation (including, in appropriate circumstances, removal of the pet) or to make a written request for a grievance hearing to discuss the violation with the   Landlord.

-State that the Tenant's failure to correct the violation or to request a grievance or to appear at a grievance hearing shall result in initiation of such procedures to have the pet removed or to terminate the Tenant's tenancy, or  both.

## PET REMOVAL

If a pet becomes vicious or displays symptoms of severe illness or other behavior that constitutes an immediate threat to the health or safety of the pet or other tenants as a whole, the Landlord or an authorized agency will be permitted to enter the Tenant's unit, remove the pet, and take such action with respect to the pet as may be permissible under state and local law.  The Landlord is permitted to enter the Premises in such case as above if anyone of four situations applies:

-The Tenant has refused to remove the pet or if the Landlord is unable to contact the Tenant to make the removal request.

-If the Tenant is willing but unable due to accident or illness to remove the   pet.

-Should the Tenant decide for any reason they no longer want the pet, it is the Tenant's responsibility to remove it and find somewhere to take it themselves at their expense.

-Landlord reasonably believes the pet is being abused or neglected, will notify the appropriate   officials

**Notice for Pet Removal.**  If the Landlord determines that the Tenant has failed to correct the pet rule violation, the Landlord may serve a notice to the Tenant requiring the Tenant to remove the pet. The notice will be in writing and will: Contain a brief statement of the factual basis for the determination and the pet rule that has been violated; state that the Tenant must remove the pet; and state that failure to remove the pet shall result in initiation of procedures to have the pet removed or terminate the Tenant's tenancy, or both.

## DEATH OF PET

Should a pet die on the Landlord's property it is the responsibility of the Tenant to dispose of the pet immediately. If this is not done within 1 day and the Landlord must dispose of such pet, the Tenant will be responsible for all costs incurred by the Landlord.  The pet may not be disposed of on the Landlord's property or in a dumpster located  thereon.

## UNIT INSPECTION

The Landlord's maintenance personnel will not be permitted to enter the Premises housing a dog or cat unless the Tenant is home and places the pet on a leash or is under control at all times while the maintenance personnel are in the unit. Any problems noticed at an inspection, such as damages to the Premises or odors, will be rectified by repairs or extermination within ten (10) days of the inspection. If the Tenant has not arranged for repairs or extermination within such ten (10) day period, the Landlord will then make the necessary repairs or extermination at the Tenant's expense.   These charges are considered to be the same as rent due and owing and must be paid within thirty (30) days    of invoice.

## DOGS.

-Dogs must be no less than eight (8) weeks old and completely   housebroken.

-Proof that the dog is already neutered or spayed must be furnished.

-Tenants must show that the animal is licensed and has received the required shots in accordance with PA law

-A dog must be on a leash at all times when outside of the Tenant's Premises unless caged

-In the case that a pet deposits waste on the Landlord's property, the Tenant must remove such   waste

-It is the Tenant's responsibility to clean up any issues caused by pet.

-No dog may stay alone in a unit overnight. It is the responsibility of the tenant if they have to leave suddenly and be away overnight to take the pet elsewhere until they    return.

-Whenever Landlord's employees or contractors need to enter the Unit, the Tenant must be present and the animal must be caged.

## CATS

**-Cats must be no less than 8 weeks old and must be litter box trained before admission. Proof that the cat has been spayed or neutered must be shown before admission approval. Cats must wear a collar at all times showing owner's name.**

-Proof must be established that the cat has received all required vaccinations.

-Cats must be on a leash at all times and carried when outside the Tenant's apartment or carried in an approved locked pet carrier.

-No cat may stay alone in an apartment overnight. It is the responsibility of the Tenant if they have to leave suddenly and be away overnight to take the pet elsewhere until they   return.

-In the case that a cat deposits waste on the Landlord's property, the Tenant must immediately remove such waste.

-Whenever Landlord's employees or contractors need to enter the unit, the Tenant must be present and the cat must be under control at all   times.

-The Tenant also agrees to comply with these rules as provide in this Rider, and the violation of these rules shall be grounds for removal of the pet or termination of the Tenant's tenancy, or both in accordance with the provisions of this policy and applicable    regulations.

_____
**Tenant's Signature**

As a pet owner residing in a McKeesport Housing Authority managed building, I have contacted the following three (3) local persons who have agreed by their signatures to accept the responsibility for removal and/or care of my pet if I become ill or for any reason cannot temporarily care for this   pet.
1.1 have read the Pet Regulations and agree to abide by these rules and assume responsibility for the pet named _____ owned by_____

  In the event the owner is out of town or for any reason is not able to continue care of the pet <u>temporarily.</u> I agree to accept full responsibility for the pet.

Name: _____    Phone:_____

Name: _____    Phone:_____

Name:_____    Phone:_____


Vet Name:_____  Phone:_____

Run date: 2/2/16

# Exhibit B

# Magisterial District Judge 05-2-13



| DOCKET | |
|---|---|
| | Docket Number: MJ-05213-LT-0000073-2024 |

## Landlord/Tenant Docket



McKeesport Housing Authority
v.
Yolanda  McCoy, Jamiesse  Spruill-McCoy, Londell  Spruill-McCoy

Page 1 of 2

### CASE INFORMATION

| | | | |
|---|---|---|---|
| Judge Assigned: | Magisterial District Judge Eugene F. Riazzi Jr. | File Date: | 02/13/2024 |
| Claim Amount: | $4,794.75 | Case Status: | Inactive |
| Judgment Amount: | $5,608.36 | County: | Allegheny |

### CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Recovery of Real Property Hearing | 02/27/2024 | 9:30 am | | Magisterial District Judge Eugene F. Riazzi Jr. | Continued |
| Recovery of Real Property Hearing | 03/19/2024 | 9:30 am | | Magisterial District Judge Eugene F. Riazzi Jr. | Scheduled |

### CASE PARTICIPANTS

| Participant Type | Participant Name | Address |
|---|---|---|
| Plaintiff | McKeesport Housing Authority | McKeesport, PA 15132 |
| Defendant | McCoy, Yolanda | McKeesport, PA 15132 |
| Defendant | Spruill-McCoy, Jamiesse | McKeesport, PA 15132 |
| Defendant | Spruill-McCoy, Londell | McKeesport, PA 15132 |

### DISPOSITION SUMMARY

| Docket Number | Plaintiff | Defendant | Disposition | Disposition Date |
|---|---|---|---|---|
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Yolanda McCoy | Judgment for Plaintiff | 03/19/2024 |
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Jamiesse Spruill-McCoy | Judgment for Plaintiff | 03/19/2024 |
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Londell Spruill-McCoy | Judgment for Plaintiff | 03/19/2024 |

### CIVIL DISPOSITION / JUDGMENT DETAILS

**Disposition Date:** 03/19/2024     **Monthly Rent:** $540.00

| Defendant(s) | Plaintiff(s) | Disposition | Joint/Several Liability | Individual Liability | Net Judgment |
|---|---|---|---|---|---|
| Yolanda McCoy; Jamiesse Spruill-McCoy; Londell Spruill-McCoy | McKeesport Housing Authority | Judgment for Plaintiff | $5,608.36 | $0.00 | $5,608.36 |

Judgment Components:

| Type | Amount | Deposit Amount | Adjusted Amount |
|---|---|---|---|
| *Rent in Arrears | $5,354.41 | $0.00 | $5,354.41 |
| *Costs | $253.95 | $0.00 | $253.95 |

* Is Joint/Several

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

# Magisterial District Judge 05-2-13

## DOCKET



Docket Number: MJ-05213-LT-0000073-2024

# Landlord/Tenant Docket

McKeesport Housing Authority

v.

Yolanda  McCoy, Jamiesse  Spruill-McCoy, Londell  Spruill-McCoy

Page 2 of 2

**Civil Disposition Details:**

| | |
|---|---|
| Grant possession. | No |
| Grant possession if money judgment is not satisfied by the time of eviction. | Yes |

## DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 04/03/2024 | Landlord/Tenant Possession Appeal Filed | Yolanda McCoy | Yolanda McCoy, Defendant |
| | | Jamiesse Spruill-McCoy | Jamiesse Spruill-McCoy, Defendant |
| | | Londell Spruill-McCoy | Londell Spruill-McCoy, Defendant |
| 03/19/2024 | Judgment for Plaintiff | Magisterial District Court 05-2-13 | Jamiesse Spruill-McCoy, Defendant |
| 03/19/2024 | Judgment for Plaintiff | Magisterial District Court 05-2-13 | Londell Spruill-McCoy, Defendant |
| 03/19/2024 | Judgment for Plaintiff | Magisterial District Court 05-2-13 | Yolanda McCoy, Defendant |
| 03/19/2024 | Judgment Entered | Magisterial District Court 05-2-13 | Jamiesse Spruill-McCoy, Defendant |
| 03/19/2024 | Judgment Entered | Magisterial District Court 05-2-13 | Londell Spruill-McCoy, Defendant |
| 03/19/2024 | Judgment Entered | Magisterial District Court 05-2-13 | Yolanda McCoy, Defendant |
| 02/13/2024 | Landlord/Tenant Complaint Filed | McKeesport Housing Authority | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the
Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions
on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court
wherein the record is maintained.

03/20/2024  WED 15:09  FAX                                                    ☑001/003

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ALLEGHENY



**NOTICE OF JUDGMENT/TRANSCRIPT**
**Residential Lease**

| | |
|---|---|
| Mag. Dist. No: | MDJ-05-2-13 |
| MDJ Name: | Honorable Eugene F. Riazzi Jr. |
| Address: | 687 O'Neil Blvd<br>McKeesport, PA 15132 |
| Telephone: | 412-664-4612 |

File Copy

McKeesport Housing Authority
v.
Yolanda McCoy, Jamiesse Spruill-McCoy,
Londell Spruill-McCoy

Docket No:   MJ-05213-LT-0000073-2024
Case Filed:  2/13/2024

**Possession Details**

Possession is granted and at any time before actual delivery of the real property is made in execution of the Order for Possession, the defendant may, in a case for the recovery of possession solely because of failure to pay rent, satisfy the Order for Possession by paying to the executing officer the rent actually in arrears and the cost of the proceedings.

**Disposition Summary** (co - Cross Complaint)

| Docket No | Plaintiff | Defendant | Disposition | Disposition Date |
|---|---|---|---|---|
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Yolanda McCoy | Judgment for Plaintiff | 03/19/2024 |
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Jamiesse Spruill-McCoy | Judgment for Plaintiff | 03/19/2024 |
| MJ-05213-LT-0000073-2024 | McKeesport Housing Authority | Londell Spruill-McCoy | Judgment for Plaintiff | 03/19/2024 |

**Judgment Summary**

| Participant | Joint/Several Liability | Individual Liability | Amount |
|---|---|---|---|
| Jamiesse Spruill-McCoy | $5,608.36 | $0.00 | $5,608.36 |
| Londell Spruill-McCoy | $5,608.36 | $0.00 | $5,608.36 |
| McKeesport Housing Authority | $0.00 | $0.00 | $0.00 |
| Yolanda McCoy | $5,608.36 | $0.00 | $5,608.36 |

**Judgment Finding** (*Post Judgment)

In the matter of McKeesport Housing Authority vs. Yolanda McCoy; Jamiesse Spruill-McCoy; Londell Spruill-McCoy on MJ-05213-LT-0000073-2024, on 3/19/2024 the judgment was awarded as follows:

The amount of rent per month, as established by the Magisterial District Judge, is $540.00

| Judgment Component | Joint/Several Liability | Individual Liability | Security Deposit Applied | Amount |
|---|---|---|---|---|
| Rent in Arrears | $5,354.41 | $0.00 | | $5,354.41 |
| Costs | $253.95 | $0.00 | | $253.95 |
| | | | Grand Total: | $5,608.36 |
| Portion of judgment for physical damages arising out of residential lease: | | | $0.00 | |

**Comments:**

Landlord may access the Request for Order for Possession form on the UJS website here: https://www.pacourts.us/forms/for-the-public

MDJS 315A
Printed: 03/19/2024  1:42:13PM

1

FREE INTERPRETER
www.pacourts.us/language-rights
412-350-5419

03/20/2024 WED 15:09  FAX                                              ☑002/003

McKeesport Housing Authority                         Docket No.: MJ-05213-LT-0000073-2024

v.

Yolanda McCoy, Jamiesse Spruill-McCoy, Londell
Spruill-McCoy

IN AN ACTION INVOLVING A RESIDENTIAL LEASE, EXCEPT AS OTHERWISE PROVIDED BELOW, ANY PARTY HAS THE RIGHT TO APPEAL FROM A JUDGMENT FOR POSSESSION WITHIN TEN DAYS AFTER THE DATE OF ENTRY OF JUDGMENT BY FILING A NOTICE OF APPEAL WITH THE PROTHONOTARY/CLERK OF COURT OF THE COURT OF COMMON PLEAS, CIVIL DIVISION. THIS APPEAL WILL INCLUDE AN APPEAL OF THE MONEY JUDGMENT, IF ANY. IN ORDER TO OBTAIN A SUPERSEDEAS, THE APPELLANT MUST DEPOSIT WITH THE PROTHONOTARY/CLERK OF COURTS THE LESSER OF THREE MONTHS RENT OR THE RENT ACTUALLY IN ARREARS ON THE DATE THE APPEAL IS FILED. HOWEVER, LOW-INCOME AND/OR SECTION 8 TENANTS SHOULD REFER TO Pa.R.Civ.P.M.D.J. 1008 OR 1013 FOR DIFFERENT PROCEDURES REGARDING THIS DEPOSIT.

A TENANT WHO IS AGGRIEVED BY A JUDGMENT FOR THE DELIVERY OF POSSESSION OF REAL PROPERTY ARISING OUT OF A RESIDENTIAL LEASE AND WHO IS A VICTIM OF DOMESTIC VIOLENCE MAY APPEAL THE JUDGMENT WITHIN 30 DAYS AFTER THE DATE OF THE ENTRY OF JUDGMENT BY FILING A NOTICE OF APPEAL WITH THE PROTHONOTARY/CLERK OF COURT OF THE COURT OF COMMON PLEAS, CIVIL DIVISION, ALONG WITH A DOMESTIC VIOLENCE AFFIDAVIT. IF THE AFFIDAVIT WAS FILED WITH THE MAGISTERIAL DISTRICT COURT TO STAY THE EXECUTION OF AN ORDER FOR POSSESSION PURSUANT TO RULE 514.1, THE TENANT SHOULD ATTACH A COPY OF THE PREVIOUSLY FILED AFFIDAVIT. IF THE TENANT DOES NOT FILE THE DOMESTIC VIOLENCE AFFIDAVIT WITH THE MAGISTERIAL DISTRICT COURT OR DOES NOT APPEAL TO THE COURT OF COMMON PLEAS WITHIN 21 DAYS FOLLOWING ENTRY OF THE JUDGMENT, THE TENANT IS AT RISK OF EVICTION.

IF A PARTY WISHES ONLY TO APPEAL THE MONEY PORTION OF A JUDGMENT INVOLVING A RESIDENTIAL LEASE, THE PARTY HAS 30 DAYS AFTER THE DATE OF ENTRY OF JUDGMENT IN WHICH TO FILE A NOTICE OF APPEAL WITH THE PROTHONOTARY/CLERK OF COURTS OF THE COURT OF COMMON PLEAS, CIVIL DIVISION.

THE PARTY FILING AN APPEAL MUST INCLUDE A COPY OF THIS NOTICE OF JUDGMENT/TRANSCRIPT FORM WITH THE NOTICE OF APPEAL. EXCEPT AS OTHERWISE PROVIDED IN THE RULES OF CIVIL PROCEDURE FOR MAGISTERIAL DISTRICT JUDGES, IF THE JUDGMENT HOLDER ELECTS TO ENTER THE JUDGMENT IN THE COURT OF COMMON PLEAS, ALL FURTHER PROCESS MUST COME FROM THE COURT OF COMMON PLEAS AND NO FURTHER PROCESS MAY BE ISSUED BY THE MAGISTERIAL DISTRICT JUDGE.

UNLESS THE JUDGMENT IS ENTERED IN THE COURT OF COMMON PLEAS, ANYONE INTERESTED IN THE JUDGMENT MAY FILE A REQUEST FOR ENTRY OF SATISFACTION WITH THE MAGISTERIAL DISTRICT JUDGE IF THE JUDGMENT DEBTOR PAYS IN FULL, SETTLES, OR OTHERWISE COMPLIES WITH THE JUDGMENT.

MAR 1 9 2024         _Eugene F. Riazzi Jr._

_____         _____
Date                    Magisterial District Judge Eugene F. Riazzi Jr.

I certify that this is a true and correct copy of the record of the proceedings containing the judgment.

_____         _____
Date                    Magisterial District Judge

MDJS 315A                                2                                   FREE INTERPRETER
Printed: 03/19/2024  1:42:13PM                                          www.pacourts.us/language-rights
                                                                            412-350-5419

03/20/2024 WED 15:09  FAX                                                              ☑003/003

McKeesport Housing Authority
v.
Yolanda McCoy, Jamiesse Sprulli-McCoy, Londell
Sprulli-McCoy

Docket No.: MJ-05213-LT-0000073-2024

## Participant List

**Plaintiff(s)**

McKeesport Housing Authority
2901 Brownlee Avenue - 2nd Floor
Attn: Frank O'Leary
McKeesport, PA 15132

**Defendant(s)**

Yolanda McCoy
36-C Crawford Village
McKeesport, PA 15132

Jamiesse Sprulli-McCoy
36-C Crawford Village
McKeesport, PA 15132

Londell Sprulli-McCoy
36-C Crawford Village
McKeesport, PA 15132

FREE INTERPRETER
www.pacourts.us/language-rights
412-350-5419

# Exhibit C

# RESIDENTIAL LEASE AGREEMENT (1/1/2014)

This RESIDENTIAL LEASE AGREEMENT ("Lease") is entered into this **29th** **DAY** of **MONTH June_YEAR 2018,** by and between the MCKEESPORT HOUSING AUTHORITY, 2901 Brownlee Street, 2nd Floor, McKeesport, PA, 15132 (the **"Landlord"**) **McKeesport Housing Authority** and (the "Tenant") **Yolanda McCoy** to the parties to this Lease, intending to be legally bound, agree to the following:

A.     Description of Premises. Subject to the terms and conditions of this Lease and in consideration of the Rent (as defined below), the Landlord leases to Tenant and Tenant leases from the Landlord, that certain unit more _36-C Crawford Village

The foregoing unit shall include any steps, porch, hallway, lawn or yard adjacent to or surrounding the unit and/or any common interest therein or in any other common area (collectively, the "Unit"). The Unit shall be used solely as a private residence. The Landlord shall provide a stove and refrigerator for use on the Unit and at no additional cost to the Tenant. "Premises" is defined as the building or complex in which the Unit is located, including common areas and grounds.

B.     Family Composition.

(i)     The Unit is for the exclusive use and occupancy by the Tenant and the Household Member(s) of the Tenant listed below:

| NAMES | NICKNAME S/ ALIAS | RELATIONSHIP | S.S.# | BIRTHDATE | M/F |
|---|---|---|---|---|---|
| **Yolanda McCoy** | | HOH | | | F |
| **Jamiesse Spruill-McCoy** | | Daughter | | | F |
| | | | | | |
| Londell Spruill-McCoy | | Son | | | M |
| ----------------------- | | ----------- | ----------- | ----------- | -------- |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(ii)     No persons other than the Tenant and the Household Member(s) listed above are permitted to reside in the Unit unless added to the Lease with the prior written approval of the Landlord. This requirement does not apply to additions by reason of natural birth or adoptions. The Tenant shall, however, be required to provide the Landlord with written notice of any such addition, whether or not the Landlord's prior written approval is required. Any and all additions to the Household Member(s) of the Tenant including, but not limited to marriage shall be subject to standard criminal background check

procedures, a credit history report and previous landlord inquiries.  In addition, the Tenant must submit such proper documentation as may be required by the Landlord, including but not limited to, certificates and licenses prior to the Landlord's written approval of an addition to the Household Member(s) of the Tenant, in the event that such approval is required, or promptly after such an addition, in the event that such approval is not required.

(iii)    Household Member(s) may include children placed in long-term foster care, and essential live-in care for elderly, disabled or handicap persons.  However, the Tenant is obligated to obtain the prior written approval of the Landlord prior to moving such individual into the Unit.

<u>Vehicles</u>.  The Tenant shall be entitled to parking for no more than two (2) vehicles; provided that the vehicles are registered with the Landlord.  The Landlord reserves the right to assign parking spaces to the Tenant and/or restrict the type of vehicles permitted at the Community.  The Tenant's second vehicle may have to be parked off site, or in a McKeesport Housing Authority designated area.  Parking passes will be issued

## 1.  LEASE TERM

The term of the Lease shall be for one (1) year and it shall begin on the __29th__  **day of June 2018** and shall terminate at midnight on the __29th__  **day of June 2019**, provided, however, that so long as the Tenant is not in default hereunder and in the absence of a notice by the Tenant to terminate, as provided for in Paragraph 15, the Lease will automatically be renewed for the successive terms of one (1) year each upon payment by the Tenant of the Rent, as defined herein on the first month following the yearly anniversary hereof.

## 2.  RENT

A.    <u>Monthly Rent</u>.  Tenant agrees to pay monthly rent in the amount of **$__**shall be made by check, money order, or credit as set forth in Section 3©.

RENT SHALL BE PAID IN ADVANCE, WITHOUT DEMAND, DEDUCTION OR SETOFF ON THE FIRST (1st) DAY OF EACH MONTH DIRECTLY TO THE LANDLORD.

If Tenant's obligation to pay Rent commences on a day other than the first day of a calendar month, Tenant shall pay to Landlord a pro rata portion of the monthly installment of Rent, such pro rata portion to be calculated based on the number of days remaining in such partial month.

B.    <u>Maintenance Charges</u>: The cost of services or repairs due to intentional or negligent  damage to the dwelling unit, common areas or grounds beyond normal wear or tear, caused by tenant, household members or by guests.  When the MHA determines that needed maintenance is not caused by normal wear and tear, tenant shall be charged with cost of such service, either in accordance with the schedule of maintenance charges posted by MHA or (for work not listed on the schedule of maintenance charges) based on the actual cost to MHA for labor and materials needed to complete the work.  If overtime work is required, overtime rates will be charged.

C.    <u>Administrative Fee</u>.  If the Landlord does not receive the Rent by the 5th day of the month a $10.00 administrative fee ("Administrative Fee") shall be charged for each month that the rent is due and not paid by the (5th) day of that month,  (5th) day falls on a weekend or holiday, the Administrative Fee will be assessed on the next business day),

## SECURITY DEPOSIT

C.    <u>Deposit</u>.  To secure the Tenant's faithful performance of all material terms of this Lease, the Tenant shall deposit with the Landlord at the time of execution of the Lease, a security deposit ("Deposit") in the amount of one month of the total tenant payment. In the event that the TTP is under $100.00 dollars the security deposit will be $99.00  (Tenants who have paid a lesser amount to the Landlord under a previous Lease are considered to have fully met this obligation).

E.    <u>Use of Deposit</u>.  This Deposit may be used to cover any unpaid rent owed to the Landlord at the time of Lease termination, or to reimburse the Landlord for the cost of repairing any damages to the Unit caused by the willful conduct or negligence of the Tenant, the Tenant's family or guests or that is otherwise attributable to the Tenant.  The Deposit may not be used to cover unpaid Rent or other charges while the Tenant continues to occupy the Unit.

F.    <u>Return of Deposit</u>.  At the time of termination of this Lease, Landlord shall return the balance of the Deposit to the Tenant within thirty (30) days of the Unit becoming vacant provided that the Tenant provides the Landlord with a forwarding address in writing.  The Landlord will also send the former resident a written statement of any costs for damages and/or other such charges for which said Deposit was utilized, in accordance with Pennsylvania law, as long as the Tenant has provided, in writing, the Landlord with a forwarding address.

3.    **UTILITIES**

A.    <u>Landlord Supplied Utilities</u>.  The Landlord shall supply, at Landlord's cost, those utilities as indicated by an [x]:
_____[ x ] electricity,  [ x ] gas,  [ x ] water and sewer,  [ x ] heat,  [x ]  refuse collection.

Tenant will pay for all other appliance charges as posted.

In the event that the Landlord deems Tenant's utility usage excessive in the Landlord's sole and absolute discretion, the Tenant will be required to reimburse the Landlord any monies above that use which is deemed reasonable in the Landlord's sole and absolute discretion.

B.    <u>Use</u>.  Utilities shall be used for normal household purposes only.

C.    <u>Interruption of Service</u>.  This Lease shall not be affected and there shall be no excuse not to pay Rent or other payments and no constructive eviction shall be claimed or allowed because of interruption or curtailment of any services or utilities in or to the Unit from causes beyond the Landlord's control.

D.    <u>In the event that the dwelling unit is individually metered for utilities, the allocation for each shall be</u>:

| Type | Community | Gas | Electric | Water | Sewage |
|------|-----------|-----|----------|-------|--------|
| Ranch Style 2 Bedroom | Locust Street | 95 | 39 | 31 | 23 |

| Ranch Style 3 Bedroom | Locust Street | 106 | | | 25 |
|---|---|---|---|---|---|
| 2 Story- 2 Bedroom | Locust Street | 100 | 39 | 31 | 23 |
| 2 Story – 3 Bedroom | Locust Street | 122 | 50 | 46 | 25 |

**Any amount over and above shall be the responsibility of the tenant.**

4. **MAINTENANCE AND REPAIRS**

A. <u>Request for Maintenance and Repairs</u>. The Tenant must request maintenance or repairs by telephone to the Maintenance Department of Landlord. During non-business hours, emergency repairs may be requested by telephoning the Landlord or its designee at (412) 673-6942. In the event that the emergency service number changes, the Tenant should contact the Landlord during regular business hours at (412) 673-6942 for the correct telephone number.

B. <u>Landlord/Tenant Responsibilities</u>. At Tenant's request, the Landlord shall provide normal maintenance and repair of the Unit. The Tenant shall be responsible for and shall pay, upon demand therefor, reasonable charges for the repair of damage beyond normal wear and tear, which is negligently or intentionally caused by the Tenant, Household Member(s) of the Tenant or guests of the Tenant. Repair charges shall be established by the Landlord in a Schedule of Tenant Charges. The Schedule of Tenant Charges is the list that shows the costs of specific repairs, and is available at the Landlord's offices. All such charges shall be deemed to be Rent.

C. <u>Accidents</u>. Charges will also be assessed to the Tenant to pay for damages caused by fire, smoke, and other related charges that are a result of negligence on the part of the Tenant, Household Member(s) of the Tenant or guests of the Tenant as determined by the Fire Department or Landlord. Such water used to extinguish fire and other related charges shall be calculated in the amount of the replacement cost, actual cost or the deducible amount on the Landlord's fire insurance, if any, whichever is less. Such charges must be paid within sixty (60) days from the date in which the charges are incurred by the Landlord. The Tenant may be given the option of entering into a reasonable payment agreement for said charges. Failure to pay such charges by the due date or in accordance with such payment agreement shall be considered a breach and grounds for termination of this Lease. All such charges shall be deemed to be Rent.

The Tenant will do nothing and permit nothing to be done on the Unit, which will contravene any fire or other insurance policy covering the same.

TENANT'S INITIALS _YM YM_

5. **REDETERMINATION OF ELIGIBILITY, RENT OR DWELLING SIZE**

A. <u>Annual Re-certifications</u>. At the time of the Tenant's annual review, the Landlord will send the Tenant a Personal Declaration and an Application for Continued Occupancy or similar form ("Declaration"). The Tenant is required to return the completed Declaration to the Landlord. The Tenant shall, together with its Submission of the Declaration elect to either pay the flat rent for the Tenant's Unit ("Flat Rent") or income based rent. If the Tenant elects income based rent, the Landlord shall verify each household's income in order to determine the appropriate Rent. In accordance with these procedures, the

Landlord may require the Tenant to furnish such verifications provided however, that verifications pertaining to public assistance and employment may be obtained directly by Landlord.

The Tenant is required to provide complete and accurate information necessary for the Landlord to determine eligibility, whether the Rent shall be the same, and appropriateness of dwelling size in accordance with the Landlord policies governing admissions and continued occupancy.

(1)     The new Rent charged as a result of the annual re-examination of Rent will take effect on the Tenant's annual re-examination date.

(2)     The Tenant is obligated to return the completed Declaration within the applicable time period.

B.  Interim Rent Redetermination.  The Tenant is obligated to report any changes in income or family composition within ten (10) business days of such change.

(1)     Increase in Income.  Tenants are required to report all income increases within 10 days of said change.

(2)     Decrease in Income.  In the event of a decrease in income the Tenant must provide all documentation concerning the decrease to the Landlord within 10 days.  If the information is submitted on time, the new Rent will become effective the first (1st) day of the month following the Tenant's reporting.  If the information is submitted late, the Rent will not change until the first (1st) day of the month following the Tenant's reporting.  No retroactive adjustments will be made if a Tenant fails to submit information on time.

Rent may  be increased in the event that said increases are required by changes in U.S. Department of Housing and Urban Development ("HUD") regulations.

TENANT'S INITIALS _____

# 6.  COMMUNITY SERVICE REQUIREMENT

A.  Tenant and each adult member of Tenant's Household as set forth in Section 1.B.(1) shall:

(1)     Contribute eight (8) hours per month of community service (not political activity); or

(2)     Participate in eight (8) hours in an economic self-sufficiency program, (defined as any program designed to encourage, assist, train, or facilitate, the economic independence of participants and their families or to provide work for participants including programs for job training, employment counseling, work placement, basic skills training, education, workforce, financial or household management apprenticeship).

B.      The foregoing requirement shall not apply to a resident who:

(1)     is 62 years of age or older;

(2)     is a blind or disabled individual, as defined under section 216(I)(1) or section 1614 of the Social Security Act (42 U.S.C. §416(i)(1); 1382c), and who is unable to comply with this section, or is a primary caretaker of such individual;

(3)     is engaged in a work activity (as such term is defined in section 407(D) of the Social Security Act (42 U.S.C. §607(d), as in effect on and after July 1, 1997);

(4)     meets the requirements for being exempted from having to engage in a work activity under the State program funded under Part A of Title IV of the Social Security Act (42 U.S.C. §601 et seq.) or under any other welfare program of the Commonwealth of Pennsylvania, including a State-administered welfare-to-work program; or

(5)     is in a family receiving assistance under a State program funded under Part A of Title IV of the Social Security Act (42 U.S.C. §601 et seq.) or under any other welfare program of the Commonwealth of Pennsylvania, including a State-administered welfare-to-work program, and has not been found by the State or other administering entity to be in compliance with such program.

C.     If the Landlord determines at the annual review, which shall take place at least thirty (30) days prior to the expiration of the Lease, that Tenant has not complied with Paragraph 8(A) of this Lease, the Landlord shall:

(1)     notify Tenant of noncompliance;

(2)     notify Tenant that Tenant may file a grievance regarding the determination of noncompliance; and

(3)     notify Tenant that unless Tenant enters into an agreement with the Landlord prior to expiration of the Lease term, which agreement shall provide that the Tenant cure any noncompliance with Section 8(A) by participating in an economic self-efficiency program or contributing to community service as many additional hours as the resident needs to comply in aggregate over a twelve (12) month term of the Lease; then the Tenant's lease shall not be renewed.

D.     IF TENANT FAILS TO COMPLY WITH REQUIREMENTS OF SECTION 8(A) AND FAILS TO ENTER INTO AN AGREEMENT AS SET FORTH IN SECTION 8(C)(3) WITH THE LANDLORD PRIOR TO EXPIRATION OF THE LEASE, THEN THE LEASE SHALL NOT BE RENEWED AND THE TENANT SHALL BE EVICTED.

TENANT'S INITIALS _YM_ _LM_

## 7. TENANT OBLIGATIONS

In addition to the other obligations under this Lease, Tenant agrees that failure to comply with the following provisions shall be a material breach of the Lease:

A. Use. To use the Unit solely as a private dwelling for the Tenant and Household Member(s) of the Tenant as named in this Lease and not to use or permit the use of the Unit for any other purpose.

B. Assignment/Subletting Tenant shall not sublease or assign this Lease.

C. Boarders/Lodgers.  Tenant shall not provide accommodations for boarders and/or lodgers.

D. Overnight Guests.  Tenant may reasonably provide accommodations to his/her guests or visitors for a period not to exceed fourteen (14) days per calendar year; provided that the Tenant must complete a visitor form at the Management Office prior to allowing any overnight guests.  A guest is someone who is present

in the Unit with the consent of the Tenant or another Household Member. Permission to permit a guest to remain in the Unit in excess of fourteen (14) days in any calendar year shall not be unreasonably withheld by the Landlord. Requests to allow a guest to remain in the Unit beyond thirty (30) days shall be referred to the Landlord for special consideration (i.e. Long term foster care or medical care of a non-resident member of the Tenant's family). This limitation does not apply to any live-in aide for the Tenant or a Household Member(s) of the Tenant.

E. <u>Rules and Regulations</u>. Tenant agrees to abide by such necessary and reasonable rules and/or regulations promulgated by the Landlord for the benefit and well being of the housing community and its tenants. Any such rules and/or regulations shall be posted in each community by the Landlord, and shall be incorporated herein by reference. Current rules and regulations are attached here to as part of the lease.

(1)     Tenant shall not use waterbeds or any other water filled furniture.

F. <u>Compliance with Laws</u>. Tenant shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force and with the requirements of any board of fire underwriters or other similar bodies now or hereafter constituted relating to or affecting the condition, use or occupancy of the Unit.

G. <u>Maintenance</u>. Tenant agrees to maintain the Unit, which includes stairwells and hallways, common areas as assigned, and the appliances assigned to the Tenant for the Tenant's exclusive use in a decent, safe, clean and sanitary condition. To cooperate with the Landlord in maintaining yards assigned to the Tenant in a neat and orderly manner. To pick up and remove trash and to dispose of garbage, rubbish and other waste in a sanitary and safe manner. The Tenant is also required to remove ice and snow from the area immediately in front of the dwelling units. In Scattered Site units, this will be the responsibility of all tenants residing in the building. If the Tenant is unable to perform the above tasks due to age or disability, as recognized by the Landlord in writing, the Tenant shall be exempt from this provision.

TENANT'S INITIALS _____

H. Conduct of Tenant

(1) Upon signing of this lease, the MHA shall deliver to the Tenant a copy of its rules, which are part of this lease, regarding the conduct of the tenant and household members and the use and treatment of the unit and premises. The Tenant agrees that the Tenant and household members shall comply with these rules and any amendments of the rules. The Tenant further agrees that the Tenant and other members of the household:

a. Shall not disturb other residents and shall prevent disturbance of other residents by guests, visitors, or other persons under the control of household members;

b. Shall not damage or destroy the dwelling unit or premises, and shall prevent such damage or destruction by guests, visitors or other persons under the control of household members;

c. Shall not engage in criminal activity in the dwelling units or premises and shall          prevent criminal activity in the unit or premises by guests, visitors, or other persons under the control of household members.

d. Shall not commit any fraud in connection with any federal housing assistance

e. Shall not receive assistance for occupancy of any other unit assisted under federal, state or local housing assistance program during the term of the lease.

f. Shall not store, keep or use any firearm on public housing premises.

(2) The MHA has adopted the policy of "One Strike and You're Out" in regard to illegal drug activity, violent activity as a result of alcohol abuse, and other criminal activity that threatens the well being of residents or employees of the MHA.

(a). THE COMMISSION OF ANY CRIMINAL ACT OF PHYSICAL VIOLENCE TO PERSONS OR PROPERTY ON OR OFF THE PREMISES WHERE THE DWELLING UNIT IS LOCATED, OR THE ILLEGAL USE, SALE OR DISTRIBUTION OF NARCOTICS ON OR OFF SAID PREMISES, BY THE TENANT OR A MEMBER OF THE TENANT'S HOUSEHOLD, CONSTITUTES A SERIOUS VIOLATION OF THIS LEASE AND SHALL BE GROUNDS FOR TERMINATION OF THIS LEASE.

(b). The tenant, any member of the Tenant's household, or a guest or other person under the Tenant's control shall not engage in criminal activity including drug-related criminal activity, on or off public housing premises and such criminal activity shall be cause for termination of tenancy.

The term "drug related criminal activity" means the illegal manufacture, sale, distribution, use or possession with the intent to manufacture, sell, distribute or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act 21 U.S.C. 802)

(c). Any drug related criminal activity, including but not limited to, the presence of an illegal controlled substance on or off the Premises. The physical presence of the controlled substance rather than actual ownership of the drugs shall constitute a material breach of this Lease and amount to grounds for immediate Lease termination in compliance with Pennsylvania law.

(d). Any illegal use (or pattern of illegal use) of a controlled substance, or any abuse (or pattern of abuse) of alcohol or any criminal activity of any kind that threatens the health, safety or right to peaceful enjoyment of the Landlord's property by other tenants or employees of the Landlord;

3.  To comply with the requirements of applicable state and local building or housing codes, materially affecting health and or safety of tenant and household.

4.  To keep the dwelling unit and other such areas as may be assigned to tenant for exclusive use in a clean and safe condition. This includes keeping front and rear entrances and walkways for the exclusive use of the tenant free from hazards and trash keeping the yard free of debris and litter. Exceptions to this requirement may be made for tenants who have no household members able to perform such tasks because of age or disability.

5.  To dispose of all garbage, rubbish and other waste from the dwelling unit in a sanitary and safe manner only in containers approved or provided by the MHA. To refrain from and cause members of tenants household or guests to refrain from littering and or leaving trash and debris in common areas.

J. IQuiet Enjoyment. To behave and cause Household Member(s) and guests to act in such a manner which will not disturb other tenant's peaceful enjoyment of their accommodations or community facilities; to refrain from illegal or other activities which would impair the physical or social environment of the community or Scattered Site (such specifically prohibited activity shall include, but is not limited to, selling alcoholic beverages from the unit or illegal gambling on the Landlord's property); and to act in such a way as to positively contribute to maintaining the development of the community or Scattered Site in a decent, safe and sanitary condition.

K. Misuse of Utilities. To use electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities including elevators in a reasonable manner, and for its intended purpose.

L. Damage to Unit. To refrain from and to prevent Household Member(s) under the Tenant's control from destroying, defacing, damaging and/or removing any part of the Unit, community buildings, facilities or property located in common areas.

M. Alterations. To obtain the prior written consent of the Landlord to make repairs, alterations, or install equipment in the Unit or common areas.

N. Request for Maintenance. To notify the Landlord immediately of the need for repairs to the Unit and of any unsafe conditions on the Unit or grounds which might lead to injury or damage.

O. Pets. To comply with the Landlord's Pet Policy. This policy prohibits the ownership and/or presence of any animals on or near the Unit, except as may be set forth on the Pet Rider attached hereto. Any violation of this provision shall constitute ground for Lease termination and costs shall be imposed on residents for removal of the Tenant's pet. Visiting pets are not permitted to enter Unit for any reason.

This policy does not apply to animals that assist, support, or provide assistance to persons with disabilities.

P. Vehicle Registration. Tenant agrees to register all vehicles owned and operated by the Tenant, Household Member(s) of the Tenant and Guests of the Tenant with the Landlord. Tenant shall register any new vehicle with Landlord immediately upon its entry upon the Premises. In addition, the Tenant is not to keep or maintain any inoperable vehicle, or a vehicle without a valid and current driver's license, license plate or inspection sticker, in the development parking areas. The Landlord, in conjunction with the local municipality will arrange for the removal of all illegally parked vehicles in accordance with state and local statutes. All vehicles must display a MHA parking permit in the window.

Q. Locks. Not to change any locks on the Landlord's property.

R. Landlord Entry. The Tenant must allow the Landlord to enter the Unit for all repairs.

S. Transfer. When a change in family composition justifies the need for transfer under Landlord's occupancy standards, the Tenant agrees to transfer to an appropriately sized dwelling unit, which meets the applicable habitability standards. The Landlord will make a good faith effort to transfer the Tenant within the same development or scattered site neighborhood. The Tenant shall be given thirty (30) days' advance written notice of the availability of a suitably sized unit prior to being required to move. The Tenant's response to the transfer offer must be received within five (5) days of receipt and must state the Tenant's willingness to move to an appropriately sized unit within fifteen (15) days. Tenants who reject a transfer to an appropriately sized unit must state specific good cause reason(s). In

the event that the reason is sufficient enough to reject the unit the Tenant will still be
required to move to another appropriately sized unit after one is assigned. Failure to respond to an
offer within five (5) days will be considered a rejection and grounds for Lease termination. All costs
associated with the move will be the responsibility of the Tenant; however, the Landlord may provide
movers for elderly and handicapped residents who are required to move as a result of being
overhoused/underhoused.

The Tenant further agrees to accept a new Lease for a dwelling unit of the appropriate size. Failure to
accept an appropriately sized unit without demonstrating good cause for rejection within five (5) days of
receipt of the offer shall constitute a material breach of this Agreement and grounds for termination of this
Lease.

The tenant agrees to move to another unit if it is determined necessary to rehabilitate or demolish tenant's
unit.

Nothing in the provisions of the Lease is intended to deny the Tenant's the benefits of State or Local
ordinances.

## 8. LANDLORD OBLIGATIONS

In addition to the other obligations under this Lease, the Landlord agrees to perform the following:

A. Maintenance. Maintain the Unit, building facilities, common areas and grounds, not otherwise
assigned to Tenant for maintenance and upkeep, in a decent, safe and sanitary condition.

B. Repairs. Make needed repairs promptly by responding within twenty-four (24) hours of receiving an
emergency repair request and within a reasonable time for regular repair requests.

    (1)    Provide inspection of the Unit by the Landlord or qualified maintenance staff.

    (2)    Complete and process all necessary work orders required to initiate the correction of the
condition in a timely manner. The Landlord shall complete the remaining repairs and all non-
emergency repairs in an adequate, competent and professional manner, as soon as practicable
following the inspection date. If the work cannot be completed within that time frame, the
Landlord shall immediately issue a repair schedule providing for the completion of the work in a
prompt and reasonable time period with a copy given to the Tenant. Tenant may request a
grievance hearing to challenge the reasonableness of the repair schedule or if the repairs are not
completed within the time scheduled for them.

    (3)    Adequately complete repairs needed to make safe any hazardous or emergency conditions
related to the repair request.

C. Compliance with Laws. Comply with requirements of applicable building codes, housing codes and
HUD regulations.

D. Garbage. Provide and maintain appropriate receptacles and facilities (except containers for exclusive
use of an individual Tenant) for the deposit of garbage, rubbish and other waste removed from the Unit by
the Tenant.

E. <u>Maintain Utilities.</u> Maintain in good and safe working condition electrical, plumbing, sanitary, heating, ventilating, appliances, elevators and other facilities that are supplied or required to be supplied by the Landlord.

F. <u>Pre-occupancy Inspection.</u> The Landlord and the Tenant will inspect the Unit prior to occupancy by the Tenant. The Landlord will give the Tenant a copy of the inspection form showing the condition of the Unit, interior and exterior, as applicable, and any equipment provided with the Unit. The inspection form shall be signed by the Landlord and Tenant and a copy of the form shall be given to Tenant and retained in the Tenant's folder. Any deficiencies noted on the inspection form will be corrected by the Landlord before the Tenant moves in, and at no charge to the Tenant.

G. <u>Post-occupancy Inspection.</u> The Landlord will inspect the Unit at the time Tenant vacates the Unit and give the Tenant a written statement of the charges, if any, for which the Tenant is responsible. The Tenant and/or the Tenant's representative and/or Resident Council President may join in such inspection, unless the Tenant vacates without notice to the Landlord.

## 11 DEFECTS HAZARDOUS TO LIFE, HEALTH AND SAFETY

A. Tenant's Notice. When conditions are created on the Unit, which create a danger to the life, health and/or safety of the residents, the Tenant shall immediately notify the Landlord of the condition. The Landlord shall be responsible for repair of the Unit, as stated in Section 6(B). If the damage was caused by Tenant, Household Member(s) of Tenant or Guests of Tenant under his/her control, the reasonable cost of repair shall be charged to the Tenant.

H. Relocation. If repair cannot be made within a reasonable time, the Landlord shall provide standard alternative accommodations, to the extent that such accommodations are available.

## 12 ENTRY OF UNIT DURING LEASE TERM

A. <u>Inspections/Maintenance.</u> The Landlord shall have to right to enter the Unit upon providing at least (48) hours' written notice delivered to Unit stating the purpose of the entry, between the hours of 8:00 a.m. and 4:30 p.m. to perform routine inspections and maintenance, or to make improvements or repairs for pest control purposes, or to determine if the Tenant still occupies the Unit when reasonable doubt exists. However, the Landlord may enter the Unit at any time without advance notice when there is reasonable cause to believe that an emergency exists.

If Tenant or another adult Household Member is not available at time of entry, the Landlord shall leave a written statement as to the date, time and purpose of such entry.

B. <u>Failure to Permit Entry.</u> Failure to allow the Landlord or its independent contractors entry into the Unit for any of the reasons indicated in paragraph 11(A) shall be  of the Lease.

## 13 DEFAULT BY LANDLORD

The Landlord shall be in default under this Lease if the Landlord materially failed to perform its obligations under this Lease. If the Landlord is in default, Tenant may file a grievance, terminate this Lease by giving notice as described in Section 17(A), or exercise any other rights permitted by state law.

## 14. GRIEVANCE

Subject to HUD rules and regulations, and any provisions contained in this Lease, the Tenant may be entitled to a grievance hearing to resolve any disputes concerning the obligations of Tenant or the Landlord under the terms of this Lease or any action or inaction by the Landlord. Tenants are not eligible for a grievance hearing when their eviction is for drug-related or violent criminal activity. The grievance will be heard in accordance with the Grievance Procedures established by the Landlord from time to time. A copy of the current Grievance Procedure is available at the Landlord's Office.

## 15. TERMINATION OF TENANCY

1.   The Tenant may terminate this Lease at any time by giving thirty (30) days written notice. The notice of intent to vacate must be signed and delivered by the Tenant to the community rental office where the Tenant resides. Rent shall be due and owing up to and including the expiration of the thirty (30) days' notice. If no notice is given, rent shall be due and owing up to and including the day the MHA shall obtain legal possession of the apartment. The Tenant must return keys on the day of vacating.

2.   The McKeesport Housing Authority may also terminate the lease for good cause, which shall be but not limited to:

a.      Failure to pay rent or other charges when due

b.      Repeated breach of the rules and regulations of the MHA;

c.      Failure to supply required documents, certifications, or other information;

d.      Fraud in application for rent;

e.      Unauthorized occupants in dwelling unit;

f.      Refusal to move to another unit authorized under the terms of this lease;

g.      Lack of adequate housekeeping resulting in hazards to adjoining Tenants and/or employees (see Attachment, Part III).

h.      Criminal activity under paragraph H of this lease.

i.      Flight to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime that is a felony under Pennsylvania law.

j.      Alcohol abuse interfering with the health, safety, or right of peaceful enjoyment of the premises by other Tenants.

k.      Engage in domestic violence, dating violence or stalking.

3.   The MHA shall give the Tenant reasonable notice of a termination of the Lease.            When the health or safety of other residents or of MHA employees is threatened and any criminal activity under the "one strike and you're out policy", only fifteen (15) days notice shall be given to the Tenant. Where termination is for non-payment of rent (15) days notice shall be given to the Tenant. In any other case, the Tenant shall receive thirty (30) days notice.

4.   Management will not terminate or refuse to renew the Lease and will not evict a tenant or a member of tenant's household from the dwelling unit if the tenant or household member is a victim of actual or threatened "domestic violence, dating violence or stalking" as those terms are defined by the MHA in its admissions and occupancy policies.

5.   Pursuant to federal law, management may bifurcate this Lease in order to evict, remove, or terminate the assistance to any person who is a Tenant or a lawful occupant under this lease when such person engages in criminal acts of physical violence against family members or others, on or off the premises. Management may take such action without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such violence who is the Tenant or is a lawful occupant under this Lease.

6.   Notwithstanding anything to the contrary contained in paragraphs 4 and 5 above, Management may terminate the Lease and evict the Tenant if it can demonstrate an actual and imminent threat to other tenants or to those employed at or providing service to the development in which the unit is located, if the tenant's tenancy is not terminated.

7.   Tenant shall be required to complete a certification of domestic violence, dating violence, or stalking.

8.   Nothing in this section shall prohibit Management from terminating the Lease and evicting the Tenant based on a violation of this Lease not involving domestic violence, dating violence, or stalking against Tenant or household member.

## 16.   NOTICES

Any notice to MHA must be in writing, delivered to the management office in Tenant's community or sent by prepaid first class mail, properly addressed.Notice to the Tenant must be in writing, delivered to Tenant or to any adult member of the household residing in the dwelling unit, or sent by first-class mail addressed to Tenant.

## 17.   MOVE-IN AND MOVE-OUTS

(a)   Move-in Inspection: MHA and Tenant or representative shall inspect the dwelling unit prior to occupancy Tenant.  MHA will give Tenant a written statement of the condition of the dwelling unit, both inside and outside, and note any equipment provided with the unit.  The statement shall be signed by MHA and Tenant and a copy of the statement retained in tenant's folder . MHA will correct any deficiencies noted on the inspection report, at no charge to Tenant.

(b)   Move-out Inspection – MHA will inspect the unit at the time Tenant vacates and give Tenant a written statement of the charges, if any, for which Tenant is responsible.  Tenant and/or representative may join in such inspection, unless Tenant vacates without notice to MHA. The Tenant shall be liable for all court costs, and attorney's fees actually expended in a legal action for enforcement of this Lease Agreement unless the Tenant prevails.

## 18.   EVICTION

The Tenant shall be liable for all court costs.

## 19.   ENTIRE AGREEMENT

A.    <u>Entire Agreement</u>.  This Lease and all policies, rules and schedules that have been incorporated by reference, constitute the entire agreement between the Landlord and Tenant.  Any amendment, change or addition shall be made only in writing and signed by both parties except for Redetermination of Eligibility, Rent or Dwelling Size.

A.  <u>Modifications</u>.  This Lease and all policies, rules and/or schedules referred to in this Lease may be modified provided the Landlord gives at least thirty (30) days' written notice to Tenant explaining the modification and giving Tenant the opportunity to comment.  Written comments will be considered by the Landlord prior to the proposed modification becoming effective.  A copy of the proposed modification shall be personally delivered or mailed to each Tenant or posted in at least three (3) conspicuous places within each building in which the affected dwelling units are located.  A copy will also be posted in a conspicuous place at the Landlord's office or similar central business location within the community.

**20. INVALIDITY OF PROVISION**

I.   If any provision of this lease is found invalid, the remaining provisions of the Lease shall remain valid and enforceable. IN WITNESS WHEREOF, intending to be legally bound, the parties hereto have caused these presents to be duly executed on the day and year first above written.

Tenant  Signature: _Yolanda McCoy_          Date: _6-29-18_

Print Name: _____

Tenant Signature: _Londell McCoy_            Date: _____

Manager Signature: _____          Date: _6/25/21_